**NATIONAL LEAD CO. v. MARZALL, Commissioner of Patents.**

**Civ. A. No. 234–51.**

United States District Court
District of Columbia.

Nov. 26, 1952.

John H. Bruninga, St. Louis, Mo., Richard G. Radue, Washington, D. C., of counsel, for plaintiff.

E. L. Reynolds, Solicitor, U. S. Patent Office, Washington, D. C., Joseph Schimmel, Attorney, U. S. Patent Office, Washington, D. C., for defendant.

CURRAN, District Judge.

This is a civil action brought under the provisions of Section 4915 of the Revised Statutes, 35 U.S.C. § 63, in which the plaintiff, National Lead Company, as assignee of the inventors, Dee A. Sikes and Jack H. Beesley, seeks to have this Court authorize the defendant, Commissioner of Patents, to grant a patent to it based upon certain claims of the Sikes and Beesley patent application, serial number 653,716, filed March 11, 1946 on an alleged invention in the "Treatment of Well-Drilling Fluids." The Patent Office denied all claims.

Plaintiff says that the present application is a continuation of application, serial number 489,890, filed June 7, 1943, as to common subject matter. This Court held that the plaintiff, assignee also of the prior application, was not entitled to letters patent on the claims there involved. The Court found that the claims did not define invention over the disclosures of the prior patent of Cannon, No. 2,109,858, granted March 1, 1938, and the prior publication of Stern, Bulletin No. R.I. 3556, Bureau of Mines, Department of the Interior, Feb. 1941. The United States Court of Appeals, 198 F.2d 296, for the District of Columbia Circuit, affirmed and a rehearing was denied September 4, 1952.

The claims before this Court are those numbered 11 to 15, inclusive, claim 16 having been withdrawn before the Board of Appeals of the Patent Office, and the plaintiff having dismissed claim 17 here.

The claims relate to a process used in the drilling of wells by the rotary system. In such drilling there is employed an aqueous mud-laden fluid, called a drilling mud. The rotary system involves the use of a drill pipe with a bit at the bottom. This bit is larger than the pipe in order to make the hole larger. At the top is a drill stem of squared section sliding through a rotary table. The whole of this section is suspended so that it can be let down into the bore hole. A drilling fluid, which is pumped down the drill pipe, issues at the bottom through holes in the bit. As the hole is cut, the drilling fluid, rising outside the drill pipe, carries the cuttings to the top where the fluid flows along a mud ditch and over a vibrating screen through which the cuttings are filtered. The fluid then passes to a suction pit where it is picked up by pumps for recirculation.

Claim 11 seems to be representative of the claims here and is as follows:

11. In the art of drilling wells through formations by the employment of an aqueous mud-laden well drilling fluid containing an amylaceous emulsoid colloid which is subject to deterioration during the course of drilling, the process, comprising, maintaining such a drilling fluid, during the course of drilling, at a pH of about 12 by addition thereto an alkaline earth metal oxide in order to inhibit such deterioration.

Plaintiff asserts patentability for a method of drilling a well which involves the use of a mud composition containing an amylaceous emulsoid colloid (gelatinized starch) at a pH (alkalinity) value of about 12, the pH value being obtained by the use of an alkaline earth metal oxide.

The basis of plaintiff's claim for invention in the prior application was that its assignors discovered that the results desired in the drilling fluid could be accomplished without fermentation of the gelatinized starch used for maintaining the viscosity (thickness—thinness) at such consistency as to convey the cuttings and also seal the bore hole by bringing the drilling fluid to a pH value of about 12 and main-

taining it there during the course of the drilling. The claims did not specify any particular material for bringing the fluid to a pH of about 12 but the specification of the application in the prior case stated that any suitable alkali could be used for the purpose, and named caustic soda, caustic potash, caustic lithium, caustic ammonia and lime. This Court found in the prior suit that plaintiff claimed as invention the use of alkali, such as caustic soda, to maintain the alkalinity of the drilling fluid at a pH value of about 12 and found that the claims defined no invention over the disclosure of the patent to Cannon nor over the disclosure of the publication by Stern.

The Cannon patent relates to a drilling fluid which includes a starch and caustic soda. A 1% solution of the latter will hydrolize or gelatinize the starch. This Court found that the pH value of a 1% solution of caustic soda was just under 13.0. The Court also found that the publication of Stern had explained the use of hydrolized starch in a well drilling fluid and said that a pH of about 11.0 or 12.0 had been found desirable.

What then is the difference between the claims held unpatentable in the prior case and those before the Court now?

Plaintiff says that the present case distinguishes from the previous case in that the present claims involve a water clay gelatinized starch lime drilling fluid, while the previous case involved broadly the employment of any alkali in such water clay gelatinized starch fluid. The Board of Appeals of the Patent Office held that the claims in the present application differed from the claims in the prior application in the limitation that the alkalinity of the mud was established and maintained by the use of an alkaline earth metal oxide. It is clear to the Court that the claims here differ from the claims held unpatentable only in the statement that an alkaline earth metal oxide is used to bring the pH value of the fluid to about 12 or to maintain the pH value at about 12 during the course of the drilling.

In National Lead Company Corporation v. Marzall, No. 10873, D.C.Cir., 198 F.2d 296, the Court held that patentability could not result from the discovery that gelatinized starch could be prevented from deteriorating in a drilling fluid by maintaining the alkalinity of the latter at about 12, since increase in the knowledge of the properties of a composition old in the prior art did not call for the grant of a patent. The Court cited Roberts v. Ryer, 91 U.S. 150, 23 L.Ed. 267.

In the light of Cannon's and Sterns' disclosures, knowing that a pH value of about 12 should be obtained, the selection of one of the compounds mentioned, which is capable of yielding a solution of a pH value of about 12, is not invention. Lime, an alkaline earth metal oxide, is specifically named by Cannon for achieving high alkalinity, and lime is the material now preferred by plaintiff. The use of lime, to reach the desired pH value of about 12 for the drilling fluid, would be obvious to any one skilled in the art and, therefore, not invention. Sterns discloses a hydrolized starch mud having a pH value of about 11 or 12. This starch is a pre-gelatinized starch added to the mud and brought to the necessary pH value by any desired alkalinizing material capable of so doing. Only the skill of the art is needed or exhibited by the selection of a relatively inexpensive caustic alkali for the job. It follows, therefore, that the claimed subject matter is clearly noninventive in view of the prior art. The claims in suit are all process claims and the testimony produced at the trial fails to show clear error on the part of the Patent Office tribunals in refusing to grant any of the claims at bar. The Court, therefore, finds for the defendant and counsel for the defendant will prepare the appropriate findings of fact and conclusions of law not inconsistent with this opinion.